# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| NINA PRIESTLEY, | : | Case No. 3:18-cv-00111 |
| Plaintiff, | : | |
| vs. | : | District Judge Walter H. Rice |
| | : | Magistrate Judge Sharon L. Ovington |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| Defendant. | : | |

# REPORT AND RECOMMENDATIONS[1]

## I. Introduction

The Social Security Administration provides Supplemental Security Income to individuals with a "disability" (among other eligibility requirements). *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. § 1382(a). A "disability" in this context means "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid job ("substantial gainful activity"). 42 U.S.C. § 1382c(a)(3)(A); *see Bowen,* 476 U.S. at 469-70.

Plaintiff Nina Priestly applied for Supplemental Security Income in early April 2012. Since then, her application and evidence has been reviewed and found wanting by two Administrative Law Judges (ALJs) in three decisions. The most recent decision, by ALJ Gregory G. Kenyon, denied Plaintiff's application based on the conclusion that her medical

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

impairments did not amount to a "disability" as defined in the Social Security Act. (Doc. #6, *PageID* #s 628-39).

Plaintiff brings the present case contending that ALJ Kenyon's decision his fraught with six errors:

1. The ALJ failed to reasonably weight the testimony of Plaintiff's case worker.
2. The ALJ did not adequately weigh the opinion of Dr. Kramer.
3. The ALJ failed to reasonably appraise Plaintiff's mental health limitations.
4. The ALJ's credibility findings are not reasonably justified.
5. The ALJ's findings regarding Plaintiff's physical capacity for work[-]relevant postures are unsupported and the product of inadequate opinion weighing.
6. The ALJ's decision is not supported by substantial evidence and the Commissioner's position is not substantially justified.

(Doc. #7, *PageID* #1273).

The Commissioner finds no error in the ALJ's decision and contends that substantial evidence supports his evaluation of the medical evidence and Plaintiff's credibility.

## II. Background

Plaintiff was forty-seven years old when she applied (in April 2012) for Supplemental Security Income. She is therefore considered a "younger person" under social-security regulations. *See* 20 C.F.R. § 416.963(c). In mid-2015, she turned fifty years old and moved into the category of a "person approaching advanced age. *See* 20 C.F.R. § 416.963(d). Plaintiff's earned a high-school education, at a minimum.[2] Her contributions to the workforce involved various jobs that the ALJ described as general office clerk.

---

[2] ALJ Kenyon concluded (as did the previous ALJ) that Plaintiff had at least a high-school education. (Doc. #6, *PageID* #s 53, 637, 743). During an administrative hearing in July 2013, Plaintiff testified that she held a bachelor's degree in English and did some graduate work. *Id*. at 68.

Plaintiff testified during administrative hearings that she experienced bad depressive episodes generally two or three times per week. (Doc. #6, *PageID* #s 72, 675-76). But, her episodes of depression can last up to a week. She has a bad week once every couple of months. *Id*. During episodes of serious depression, she sleeps much of the day and is awake much of the night. *Id*. She isolates herself by not typically leaving her home during a bad episode of depression, and she "can't pull herself together enough to actually do" household activities. *Id*. at 72-73, 665, 675, 984-85. She will not take a shower or bath during her bad days and weeks. Even during some of her better weeks she is unable to muster the determination to shower or bathe. As a result, she might go months without showering or bathing. *Id*. at 675-76.

Plaintiff has difficulty with her energy levels. She explained, "Some days I just don't function. I just can't even handle getting up, sometimes. And other times I can handle getting up. But it's difficult to get out of … clothes you wear at home that you do not wear out in public. Some days I just don't. I don't…, do anything at all." *Id*. at 666-67. She spends most of a bad day sleeping. This occurs a couple of times a month. *Id*. at 667, 984. Activity or stress on one day can also significantly reduce her ability to function on the next day. *Id*. at 990. Sometimes Plaintiff's depressive episodes interfere with her sleep, resulting in her occasionally missing mental-health-treatment appointments. *Id*. at 73. Her missed appointments occasionally allow her prescriptions to lapse, briefly forcing her to go without her medications. *Id*. at 75. Her memory is also poor and she struggles to interact "in a socially acceptable way" for more than a brief period of time (four to six hours). *Id*. at 669, 674. She explained:

> I have way less patience than I used to have, which affects my interacting with other people. But also, more than that, I just – I go for a certain amount of time, and then I just can't seem to make myself keep doing whatever it is that I'm trying to do. Sometimes it's as if I've lost interest. Whether I actually lost interest, or just motivation and concentration, I don't know.

*Id*. at 674. Plaintiff has also occasionally struggled with suicidal thoughts. Id. at 667. She also picked at the skin on her arms or "other places." *Id*. at 667-68. She testified, "I suppose you could say I've been working at not doing that. Primarily, by doing things like knitting. As long as I can keep my hands busy with something else, I cannot rip at myself." *Id*. at 668.

Plaintiff's caseworker at Eastway Behavioral Healthcare, Ms. Donna Yount, testified during Plaintiff's 2013 administrative hearing. *Id*. at 81-86. She had been a caseworker at Eastway for over thirteen years. She held a state-issued "social worker assistant license." *Id*. at 81-82. She helped Plaintiff by coordinating her paperwork and handling administrative matters. In 2013, Ms. Yount had known Plaintiff for close to two years. Ms. Yount explained that Plaintiff saw a doctor at Eastway every two months, and Ms. Yount was scheduled to visit Plaintiff at her home once a month. *Id*. at 82-83. Plaintiff testified that Ms. Yount coordinates her appointments at Eastway and visits her home on a monthly basis as part of her mental health treatment. *Id*. at 79-80.

In discussing the assistance she provides to Plaintiff, Ms. Yount explained, "She has a lot of difficulty, she's very unmotivated about things, and I really have to encourage her a lot to get her to call places, like if she needs to see the doctor and she doesn't want to follow through, I'll have to help her do that as well." *Id*. at 84. Ms. Yount acknowledged that she did not provide Plaintiff with any medical treatment, "just mental health services like encouragement, coordination, linking the services, referring her, educating her." *Id*. at 83. Ms.

4

Yount helped Plaintiff when she had difficulty with motivation for treatment. Ms. Yount described Plaintiff as "very unmotivated about things." *Id*. at 84. Ms. Yount would encourage Plaintiff a lot and help "get her to call places, like if she needs to see the doctor and she doesn't want to follow through …." *Id*.

Ms. Yount also testified that at times she would need to visit Plaintiff more than once a month:

> I would see her more often if I don't get any responses from her when I call her. Sometimes she won't answer the phone, I start getting concerned after a while. I'll send her a letter, I may not hear from her about that. Sometimes I have been known to do home visits where she doesn't answer the door. I can see at those times that that's when she's starting to have a lot of problems, like no motivation and probably having more depression as well.

*Id*. at 85.

Ms. Yount also testified during Plaintiff's 2016 hearing before ALJ Kenyon. *Id*. at 678-81. By that time, she had been working with Plaintiff for five to six years. Ms. Yount observed that Plaintiff gets depressed and unmotivated very easily. *Id*. at 679. She explained that she has needed to periodically check on Plaintiff in her home because she would stop answering phone calls and attending to daily chores during her depressive periods. *Id.* 680-81. Ms. Yount further described Plaintiff's difficulties: "It's hard for her to really complete tasks when she's depressed, and keeping up with her chores, and her housework stuff…." *Id*. at 680. Ms. Yount noted that Plaintiff's depressive episodes were probably happening more than once per month. *Id*.

As to the medical evidence, the ALJ discussed it in his decision, and the Commissioner relies on the ALJ's discussion. (Doc. #10, *PageID* #1294). Plaintiff has summarized and also discussed the medical evidence concerning Plaintiff's mental-health impairments and

5

treatment. (Doc. #7, *PageID* #s 1267-72). Rather than repeat the ALJ's or Plaintiff's descriptions of the medical evidence, the Court will discuss the pertinent evidence in the course of this Report.

III. **Standard of Review and ALJ Kenyon's Decision**

Review of ALJ Kenyon's most-recent decision considers whether he applied the correct legal standards and whether substantial evidence supports his findings. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance...." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *see Lawson v. Comm'r of Soc. Sec.*, 3:17cv119, 2018 WL 3301421, at *4 (S.D. Ohio 2018) (Ovington, M.J.), *Report & Recommendations adopted*, 2018 WL 3549787, at *1 (S.D. Ohio 2018) (Rice, D.J.).

The ALJ considered the evidence and evaluated Plaintiff's disability assertion under each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 416.920. His more pertinent findings began at steps two and three where he found that Plaintiff had severe impairments—hypertension; plantar fasciitis; morbid obesity; depression; and posttraumatic stress disorder—and that her impairments did not automatically qualify her for benefits. (Doc. #6, *PageID* #s 960-62).

At step four, the ALJ concluded that the most Plaintiff could do (her "residual functional capacity," *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002)), consists of "medium work" with 10 specific limitations—for example, "(1) frequent crouching, crawling, kneeling, stooping, and climbing of ramps and stairs…; (4) limited to performing

6

unskilled, simple, repetitive tasks; (5) occasional contact with co-workers and supervisors; (6) no fast paced production work or jobs which involve strict production quotas; (7) limited to performing jobs in which there is little, if any, change in the job duties or the work routine from one day to the next." *Id*. at 962. The ALJ's assessment of Plaintiff's residual capacity led him to conclude that Plaintiff could not perform her past relevant work. *Id*. at 965.

The ALJ found at step five that Plaintiff retained the ability to perform a significant number of jobs that exist in the national economy. These main findings led the ALJ to ultimately conclude that Plaintiff was not under a benefits-qualifying disability. *Id.* at 966-67.

## IV. Discussion

ALJ Kenyon's most recent decision resulted from the parties' agreement to remand Plaintiff's previous case in this Court. On remand, the Appeals Council vacated ALJ Kenyon's earlier decision and identified several problems:

> The hearing decision does not contain an adequate evaluation of the opinions by the claimant's caseworker, Donna Yount. The decision first indicates that Ms. Yount's opinions are not entitled to controlling weight because she is not a medical source; however, it does not seem that the decision took into consideration the language of Social Security Ruling 06-03p, which indicates such sources may be valuable given the close contact and personal knowledge they often have with respect to the claimant (Hearing Decision, page 10). The decision's next reason for discounting Ms. Yount's testimony that the claimant is deterred by a lack of motivation, indicating the record contains objective evidence to the contrary, is insufficient, as it is not accompanied by any specific citations or references. Therefore, a reassessment of Ms. Yount's testimony is necessary.[3]

*Id*. at 1013 (footnote added).

---

[3] Social Security Ruling 06-03p was rescinded in March 2017 but was in effect on the date of the Appeals Council's remand order.

7

On remand, ALJ Kenyon considered Ms. Yount's testimony in only two sentences. He wrote:

> The undersigned has afforded the testimony of Ms. Yount little weight. In coming to this decision, the undersigned notes that she is not a mental health professional, but more importantly, her testimony regarding the severity of the claimant's symptoms is not supported by the claimant's mental health treatment records….

*Id.* at 963 (citing Exhibits 6F, 9F, 14F, 16F, 22F, 24F, 29F, and 30F; Social Security Rulings 92-2p and 92-5p). This paucity of analysis is insufficient to justify ALJ Kenyon's assignment of only little weight to Ms. Yount's testimony. By simply rewording—without substantive change—the same reasons he had previously given for placing little weight on Ms. Yount's testimony, the ALJ essentially overlooked or ignored the Appeals Council's reasoning. The ALJ appears, moreover, to have given Ms. Yount's testimony less consideration than he did in his first decision. *Compare* Doc. #6, *PageID* #s 963 *with* 637. Yet even if the ALJ considered Ms. Yount's testimony more carefully than he had before, his reasons for giving Ms. Yount's testimony little weight are again inadequate. As one reason to reject Ms. Yount's testimony, the ALJ repeated his previous observation that Ms. Yount is "is not a mental health professional …." *Id.* at 963. This represents the same problem the Appeals Council found: neglecting "Soc. Sec. R. 06-03p, which indicates that such sources [*i.e.*, Ms. Yount] may be valuable given the close contact and personal knowledge they often have with respect to the claimant." *Id.* at 1013. It is also concerning that ALJ Kenyon cited Soc. Sec. R. 92-2p and 92-5p because it appears that these Rulings did not exist—then or now. Perhaps these were typographical miscues. Maybe the ALJ meant to refer to more frequently cited Rulings, such as Rulings 96-2p (discussing how to evaluate treating-source opinions for controlling weight) or 96-5p (discussing medical source on issues reserved to the Commissioner). Yet, why would

8

he cite these Rulings? Neither has anything to do with Ms. Yount's testimony. She is not a treating source and did not express any opinion on an issue reserved to the Commissioner. Still, if these are mere typographical blunders, resulting incorrect citations do not inspire confidence in the ALJ's review of Ms. Yount's testimony.

ALJ Kenyon also repeats the other error that the Appeals Council identified. He did not support his re-assessment of Ms. Yount's testimony with "any specific citations or references." *Id*. at 1013. Rather than provide such citations, ALJ Kenyon summarily refers to every single exhibit in the record that contains treatment notes from Eastway. *See id.* at 963 (citing Exhibits 6F, 9F, 14F, 16F, 22F, 24F, 29F, and 30F). This exaggerated inclusiveness fails to meaningfully or reasonably link the evidence to ALJ Kenyon's conclusion that the entirety of Ms. Yount's testimony (during two different administrative hearings) deserves little weight. *See Dalton v. Berryhill*, No. 3:16-CV-57, 2017 WL 766908, at *2 (S.D. Ohio Feb. 27, 2017) (Rice, D.J.) (citing *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009) ) ("[t]he ALJ is not required to discuss every piece of evidence, but must build a logical bridge from evidence to conclusion."); *see also Moon v. Colvin,* 763 F.3d 718, 721 (7th Cir. 2014) (The ALJ errs by failing to create a "logical bridge" between the evidence cited and conclusions drawn). Additionally, the ALJ's general citations to Exhibits suggests that he found all the information in these Exhibits did not support Ms. Yount's testimony. (Doc. #6, *PageID* #963). Substantial evidence does not support this view because these records reveal Plaintiff's struggles with mental-health issues overtime and demonstrate consistency between Ms. Yount's testimony, her observations of Plaintiff over time (seen in her treatment records), Plaintiff's psychiatric and pharmacological assessments, and Plaintiff's testimony. *See id*., *e.g.*, 442, 445-48, 455-56,

9

458, 520, 856, 877-79, 881-82. And the Appeals Council itself references Plaintiff's mental-exam findings and diagnoses as suggestive of greater functional limitations than ALJ Kenyon recognized in his previous non-disability decision. *Id*. at 1014.

Plaintiff next argues that the ALJ erred when evaluating one-time examining psychologist Donald J. Kramer's opinions.

At the request of the state agency, Dr. Kramer examined and evaluated Plaintiff in July 2012. He based the information in his report on an undated outpatient evaluation, Plaintiff's self-report, and "the clinical impression…" he obtained during Plaintiff's interview. (Doc. #6, *PageID* #386). Dr. Kramer indicated that Plaintiff "appears to be a reliable information…. [H]er self-report appears to be consistent with her past history of psychiatric treatment." *Id*. at 390. Dr. Kramer explained, "She does report a history of abuse, mainly sexual and physical abuse from her father…. [She] reports that she has had problems with depression all of her life and that her current depression became worse in 2003 following her stroke…." *Id*. at 387.

Dr. Kramer diagnosed Plaintiff with depressive disorder not otherwise specified. *Id*. at 390. He observed that Plaintiff's "affect was basically normal with no acute emotional distress noted. She was spontaneous and quite verbal in today's examination but despite her good verbal expressive skills, she still tended to be a little vague, especially in terms of describing her symptoms of depression and their impact upon her functioning…. Overall the claimant describes significant episodes of depression which she believes would impact upon her work attendance, although she displayed no acute emotional distress in the interview itself." *Id*. at 388. Dr. Kramer opined that Plaintiff "may have some problems with persistence and pace during her depressive episodes…. [and] she does indicate that during her depressive episodes

she withdraws and tends to keep to herself and is more emotional and tearful….." *Id*. at 391.

Dr. Kramer noted, "she seems to have some problems maintaining appropriate work functioning over extended periods of time because of her episodes of depression…." *Id*.

> The ALJ placed "limited weight" on Dr. Kramer's report, explaining:
>
> [Dr. Kramer] indicated that the claimant would have some difficulty maintaining attention, concentration, persistence, and pace, as well as with social functioning during depressive episodes. However, even during periods of depressive exacerbation, the claimant's symptoms are of only mild to perhaps moderate level severity: she experiences poor motivation and a tendency toward self-isolation. Yet, the record does not indicate that she experiences either of these symptoms to a debilitating extent. Her depressive exacerbations also do not occur with such frequency or regularity that she would be a chronically unreliable worker. Dr. Kramer also noted an otherwise unremarkable mental status exam with cooperative behavior. It is also noted that his opinion was based on a one-time examination. The claimant's progress notes do not demonstrate that her depressive exacerbations are so frequent that she could maintain attendance at a job on a consistent basis (Exhibits 6F, 9F, 14F, 16F, 22F, 24F, 29F, and 30F). She may have days when she elects to stay in bed, but this appears to be a matter of preference.

*Id*. at 963.

There are multiple errors in the ALJ's review of Dr. Kramer's report. The errors begin with the exact error previously identified by the Appeals Council, a discussed above: a neglect to cite any specific records or evidence in support of his opinion weighing. *See id*. at 1013. While ALJ Kenyon's weighing of Dr. Kramer's opinions contains citations, they are non-specific and summarily reference every medical exhibit that documents Plaintiff's mental-health treatment. *Id*. at 963. The ALJ's citations illustrate the same neglect of the contents of those records discussed above with respect to the ALJ's weighing of Ms. Yount's testimony. It is also inconsistent with the Appeals Council's own summation of the contents of the cited exhibits. *See id*. at 1014.

11

ALJ Kenyon's weighing of Dr. Kramer's opinions contains additional problems. His statement that Plaintiff's "symptoms are of only mild to perhaps moderate level severity" during her depressive episodes and are otherwise insufficiently "debilitating" or frequent to support Dr. Kramer's opinions is both unexplained and without apparent evidentiary basis. *See id*. at 963. ALJ Kenyon also erred in referring to Plaintiff's presentation before and cooperation with Dr. Kramer as a basis for rejecting the examining psychologist's opinions. *Id*. at 963. ALJ Kenyon was not permitted to supplant his own interpretation and analysis of Dr. Kramer's observations for that of Dr. Kramer himself. *Cf. Simpson v. Comm. of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (citing, in part, *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings[.]")).

Perhaps more significantly, a claimant's ability to be cooperative or otherwise pleasant during a psychological examination is not evidence adverse to the presence of disabling limitations. The relevant inquiry explores a disability claimant's ability to maintain functioning on a sustained basis, not during a singular examination. *See Vaughn v. Comm'r of Soc. Sec.*, 3:13-cv-122 *17, 2014 WL 683307, at *8 (S.D. Ohio 2014) (citing *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 378 (6th Cir. 2013). This is particularly salient here as Plaintiff's allegations of disability center upon a significant ebb and flow of her depressive episodes, meaning that it would be unreasonable to expect her severe depression to visibly manifest during every treatment encounter or examination. And the ALJ ignored or overlooked Dr. Kramer's report that Plaintiff "appears to be a reliable informant…." (Doc. #6, *PageID* #390). When discussing Plaintiff's reliability, moreover, Dr. Kramer recognized that

12

she was "open and honest in sharing information…" *Id*. Although Dr. Kramer found that Plaintiff's self-report did not match up with the symptoms she presented during his examination, "her self-report appears to be consistent with her past history of psychiatric treatment." *Id*. It was error for the ALJ to overlook this aspect of Dr. Kramer's report. *See Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 641 (6th Cir. 2013) ("[A] substantiality of evidence evaluation does not permit a selective reading of the record."); *see also Minor v. Comm'r of Soc. Sec.*, 513 F. App'x 417, 435 (6th Cir. 2013) (reversing where the ALJ "cherry-picked select portions of the record" rather than doing a proper analysis); *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000) ("ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position.").

Turning to another problem, ALJ Kenyon goes well beyond the evidence of record in stating that Plaintiff's social isolation and inactivity born of her depressive disorder "appears to be a matter of preference." *Id*. at 963. He cites no medical evidence or other evidence of record that suggest Plaintiff chose—rather than depression caused her—to stay in bed or otherwise isolate herself. The record, including Dr. Kramer's report, leans in the opposite direction, gravitating towards the conclusion that Plaintiff struggled with depression for years until she could no longer hold it at bay without mental-health treatment. *See id.* at 388; *see also* 442, 445-48, 455-56, 458, 520, 856, 877-79, 881-82. And depression commonly manifests itself in social isolation. *E.g.,* http://www.webmd.com/depression/features/depression-traps-and-pitfalls#1 ("Avoiding social contact is a common pattern you might notice when falling into depression. Some people skip activities they normally enjoy and isolate themselves from the world. Others turn to alcohol or

junk food to mask their pain and unhappiness."). To put it cavalierly—as the ALJ does—that Plaintiff "may have days when she elects to stay in bed, but this appears to be [a] matter of preference," *id.* at 963, is cynicism based on a poor understanding of depression and is not a reasonable understanding of Dr. Kramer's acceptance of Plaintiff being "open and honest in sharing information." *Id.* at 390.

Plaintiff also argues that the ALJ's assessment of her residual functional capacity was unreasonable because he found Plaintiff had *less* mental-health restrictions than he had previously identified in 2016. Specifically, ALJ Kenyon's 2016 assessment of Plaintiff's residual functional capacity found her unable to do a job with any public contact whereas his more recent finding indicates that she can directly interact with the public for up to one third of every eight-hour workday. *Compare id.* at 634 *with id.* at 962. Similarly, the ALJ's previous appraisal of Plaintiff's residual functional capacity precluded driving, teamwork, tandem tasks, and over-the-shoulder supervision; his more recent appraisal contained none of these limitations. *Id.* The ALJ made these changes despite the Appeals Council's admonishment: "The hearing decision does not contain a thorough assessment of the claimant's mental impairments and limitations. The record reveals that the claimant may have *greater* functional limitations than the decision determined, as evidenced by mental exam findings and diagnoses during the relevant period." *Id.* at 1013-14 (emphasis added) (citations omitted).

True, the Appeals Council did not mandate ALJ Kenyon to find that Plaintiff had greater mental-work limitations. But his decision to find Plaintiff less limited (more able to work) than he had previously found her suggests a foreordained, rather than evidence-based, non-disability decision. Regardless, it was unreasonable for the ALJ to find Plaintiff able to

14

interact directly with the public for up to a third of every eight-hour workday, when Dr. Kramer's report gives credence to her self-reported tendency "to isolate herself during period[s] of depression."

Accordingly, for the above reasons, Plaintiff's Statement of Errors is well taken.[4]

## V. <u>Remand</u>

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F.3d at 746. Remand may be warranted when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F.3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 725-26 (6th Cir. 2014); or failed to provide specific reasons supported by substantial evidence for finding the plaintiff lacks credibility, *see Rogers*, 486 F.3d at 249.

Under sentence four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under sentence 4 may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted

---

[4] In light of the above discussion, and the resulting need to remand this case, an in-depth analysis of Plaintiff's other challenges to the ALJ's decision is unwarranted.

15

where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

This is an unusual case considering its age—more than 7 years old—and the fact that a remand for further proceedings would require a fourth decision by an Administrative Law Judge (unless the Appeals Council remanded for benefits). In these circumstances and given the strong evidence of disability while contrary evidence is lacking, there is no just reason to further delay this matter for even more administrative proceedings. *See Gentry*, 741 F.3d at 730 (remanding for benefits after 2 remands and 3 administrative hearings and finding, "In light of the extensive opinions of treating physicians as to the severity of Gentry's psoriasis and psoriatic arthritis, we conclude that substantial evidence on the record as a whole supports a finding of total disability."); *see also Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication." (other citation omitted)); *Wilder v. Apfel*, 153 F.3d 799, 804 (7th Cir. 1998) ("Given the obduracy evidenced by the action of the administrative agency on remand, we remand the case to the agency with directions that the application for benefits be granted."); *Randall v. Sullivan*, 956 F.2d 105, 109 (5th Cir. 1992) ("Because of the medical record, we think it unconscionable to remand this eight year old case to the Secretary for further review.").

**IT IS THEREFORE RECOMMENDED THAT**:

1. The Commissioner's non-disability finding be vacated;

2. This matter be **REMANDED** to the Social Security Administration under sentence four of 42 U.S.C. § 405(g) for payment of benefits; and

3. The case be terminated on the Court's docket.

August 5, 2019  *s/Sharon L. Ovington*
Sharon L. Ovington
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).